FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

2013 AUG 30  A II: 09

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| AESP, INC.<br>999 NW 159th Drive<br>Miami FL 33169<br><br>and<br><br>SIGNAMAX, INC.<br>999 NW 159th Drive<br>Miami FL 33169<br><br>Plaintiffs,<br>v.<br><br>SIGNAMAX, LLC<br>Serve: Corporation Service Company, R.A.<br>1090 VERMONT AVE.<br>N.W. Washington, DC 20005<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No. 1:13cv1089 - TSE/TCB<br><br>Jury Trial Demanded |

## COMPLAINT

Come now AESP, Inc. ("AESP" individually) and Signamax, Inc. ("Signamax"

individually) (collectively, hereinafter "Plaintiffs"), by and through undersigned counsel, and file

this Complaint against Defendant Signamax, LLC (hereinafter "Signamax LLC" or "Defendant")

and in support thereof state as follows:

### INTRODUCTION

1.  This is an action for a declaratory judgment of trademark rights, injunctive relief,

trademark and copyright infringement, fraud, unfair competition, conversion and a request for an

accounting.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over these claims for declaratory relief arising under the laws of the United States, pursuant to 28 U.S.C. §§ 1331 and 1338(a), and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

3.  This Court has subject matter jurisdiction over this matter under *inter alia* 15 U.S.C. § 1121, 28 U.S.C. §§1332(a) in that the parties are from different states and the amount in question is in excess of $100,000; and 1338(a) and 28 U.S.C. §2201, in that this case arises under the Trademark Laws of the United States, 15 U.S.C. §§1051 et seq., and the Copyright Laws of the United States, 28 U.S.C. § 1400(a), and a real, actual and justiciable controversy exists between the parties hereto as more particularly alleged below.

4.  Venue is prope r in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).[1]

## PARTIES

5.  Plaintiff AESP, Inc. is a corporation organized and existing under the laws of the state of Florida.

6.  Plaintiff Signamax, Inc. is a corporation and a wholly owned subsidiary of AESP, organized and existing under the laws of the state of Florida.

7.  Defendant Signamax LLC, upon information and belief, is a District of Columbia Limited Liability Company and having its principle place of business in the District of Columbia. Upon its own admission, Defendant transacts business in this judicial district.[1]

8.  Upon information and be lief, Defendant was formed by an individual, Ivo Kraváček, and a Czech company, Intelek spol. s.r.o., ("Intelek") for the purpose of preying on Plaintiffs'

---

[1]Defendant has admitted on its website that it does business in Virginia and environs. *See* <www.signamax.eu/info.jsp?name=reference_signamax_EN>

United States customers and good will, as more particularly set forth below.

## BACKGROUND FACTS

9. AESP was founded in 1983. Its primary business was the design, development, manufacturing and sales of cables for interconnecting personal computers and peripherals such as printers, disk drives and other devices.

10. In 1999, AESP acquired Communication Components Co., Inc. ("CCCI"), including its trademarks.

11. The primary business of CCCI was the design, development, manufacturing and sales of commercial and enterprise level interconnect cables and devices used for computer networking, referred to as Structured Cabling Products.

12. CCCI developed the SIGNAMAX mark in early 1994 to identify its line of Structured Cabling products and systems sold in the United States.

13. In 2000, AESP began marketing and selling the former CCCI SIGNAMAX CONNECTIVITY SYSTEMS line of Structured Cabling Products.

14. In 2001, AESP began the process of rebranding its entire product line with the SIGNAMAX CONNECTIVITY SYSTEMS mark (the "Mark") and has continuously used the Mark to identify all of its products since that date.

15. AESP uses the SIGNAMAX CONNECTIVITY SYSTEMS mark to identify the following products: Category 6A, 6 and 5e Keystone Jacks, Keystone Multimedia Modules, Keystone Faceplates, Surface Mount Multimedia Boxes, Category 6A, 6 and 5e Patch Panels, Gigabit Ethernet Patch Panels, Fast Ethernet Patch Panels, Modular-Telco Patch Panels, Category 6 and 5e 110 Cross-Connect Blocks, 66 Blocks and Accessories, Category 6A, 6 and 5e Patch Cords and Cable, Optical Fiber Enclosures, Optical Fiber Adapter Plates, Optical Fiber

Adapters and Connectors, Optical Fiber Patch Cords and Pigtails, Optical Fiber MTP Assemblies, Equipment Racks, Wall Mount Brackets, Optical Fiber Media Converters, Ethernet Switches and Network Interface Cards.

16. In 2006, AESP created Signamax, Inc., a plaintiff in this lawsuit, from its former Signamax Division, and made it responsible for the manufacture, sale, and distribution of products bearing the SIGNAMAX CONNECTIVITY SYSTEMS trademark.

17. AESP and its Signamax subsidiary have sold SIGNAMAX branded products throughout the United States and Canada as well as many international markets including Russia, Ukraine, Czech Republic, Slovakia, Germany, Norway, Sweden, Austria, Australia, Italy, France, Spain, UK, Denmark, Libya, Saudi Arabia, UAE, Oman, Egypt, India, Indonesia, Vietnam, Costa Rica, Panama, Nicaragua, Guatemala, Mexico, Colombia, Venezuela, Suriname, Ecuador, Peru, Chile, Brazil and Bolivia.

18. Signamax and AESP have spent considerable resources over the past 13 years in sales and marketing expenses promoting the SIGNAMAX/SIGNAMAX CONNECTIVITY SYSTEMS marks, including publication of product catalogs, product brochures, distributor promotional rebates, 3rd party sales commissions, exhibiting at industry trade shows both in the U.S. and international markets, development of training materials, and maintenance and development of its current web site (www.signamax.com).

## Relationship Between AESP and Intelek

19. In 2001, AESP acquired Intelek spol. s.r.o., ("Intelek"), an electronics distributor headquartered in the Czech Republic, and made it a wholly owned subsidiary for the purpose of establishing a market presence in the Czech and Slovak Republics.

20. At the time of its purchase by AESP, Intelek had never marketed or sold SIGNAMAX CONNECTIVITY SYSTEMS branded products anywhere in the world.

21. In 2002, AESP caused Intelek to apply for trademark registrations of SIGNAMAX
CONNECTIVITY SYSTEMS and another trademark, "AESP", in the Czech Republic and the
United States.

22. Intelek billed AESP for the costs of obtaining the trademark registrations, for which
AESP then reimbursed Intelek.

23. As instructed by AESP, Intelek filed the registrations entirely on AESP's behalf as
Intelek's own invoice to AESP admits:

> "We reinvoice you expenses for registration of your trade marks
> "AESP" and "Signamax", which we spent on your behalf.

Exhibit A, attached hereto.

24.   The U.S. Trademark Registration No. 2793882 was issued to Intelek on December
16, 2003.[2]  See Exhibit B pertaining to the U.S. trademark registration, attached hereto.

25. During the same time period, AESP authorized Intelek to market and sell
SIGNAMAX CONNECTIVITY SYSTEMS marked products in the Czech and Slovak Republics,
only.

26. AESP Germany, a wholly owned and controlled subsidiary of AESP, controlled and
coordinated all international sales of SIGNAMAX CONNECTIVITY SYSTEMS marked
product by Intelek.

27. Quality control of SIGNAMAX CONNECTIVITY SYSTEMS was also the
responsibility of AESP throughout the period of AESP's ownership of Intelek:

a.    AESP's product management team developed and designed the performance
specifications for all SIGNAMAX CONNECTIVY SYSTEMS branded products, which were
manufactured in China and Taiwan.

---

[2]The Czech Trademark, No. 246216, was issued to Intelek on July 24, 2002.

    b.   All products sold to United States customers were inspected at AESP's Miami, Florida facility.

    c.   All products sold to European customers were inspected by Intelek using AESP policies and procedures and implemented under AESP supervision.

### Sale of AESP's Overseas Assets

28. In 2004, AESP decided to sell several overseas operations, including Intelek, to concentrate its sales efforts in the United States.

29. In September 2004, AESP and Intelek entered into a trademark transfer agreement ("Trademark Transfer Agreement") in which Intelek's rights in the Czech trademark registrations were transferred to AESP. Express transfer of the United States trademark registration was erroneously omitted from the agreement, although the consideration paid by AESP for transfer of the registrations included the costs of registering the United States trademarks. The omission of the United States trademarks was a scrivener's error that neither party discovered at the time. Exhibit C, attached hereto.

30. On April 3, 2005, AESP sold its entire interest in Intelek to Apron, s.r.o. ("Apron") with Ivo Kraváček, the former managing director of AESP's Intelek subsidiary, "acting" as the Company Director. The corporate and business relationship between the AESP, Apron and Intelek ended on that date.

31. Notwithstanding the Trademark Transfer Agreement of September 2004, it was the understanding of the parties to the April 2005 transaction that henceforth AESP was the owner of its Signamax registration. Section 7 of the sales agreement between Apron and AESP ("Sales Agreement") stated:

> The Purchaser is entitled to use the designation Signamax or a designation interchangeable therewith in relation *to the Company or any other third party* only upon previous written consent of the

transferor [AESP].

Exhibit D, attached hereto (emphasis added). The Sales Agreement defines "Company" as Intelek ("Preamble").

32. AESP has never granted its consent to Intelek or any other party to use the Mark.

33. In September 2005, AESP filed a legal action against Intelek in the Czech Republic, District Court of Brno, alleging trademark infringement of the SIGNAMAX CONNECTIVITY SYSTEMS mark, which was later amended to include claims for unfair competition and requesting injunctive relief with respect to the use of the Mark in the Czech Republic.

34. The Czech court issued an opinion on March 11, 2011 denying AESP any relief. The Czech court, ignoring the definition of "Company" under the Sales Agreement, concluded that Section 7 of the Sales Agreement did not apply to Intelek but to Apron, the purchaser and sole-shareholder of Intelek.

**Creation of Defendant Signamax LLC and Use of the Mark**

35. According to the District of Columbia public records, on July 29, 2005, Signamax, LLC, the Defendant herein, was registered as a Washington, D.C. limited liability company.

36. Upon information and belief, the formation of Signamax, LLC was done at the direction of Ivo Kraváček, Intelek's and Apron's Managing Director for the specific purpose of preying upon AESP's client base, goodwill and reputation.

37. USPTO records indicate that Intelek recorded an assignment of U.S. trademark registration No. 2,793,883 on August 24, 2005 that designated Signamax, LLC as the assignee. Exhibit E, attached hereto.

38. AESP was not given notice of either the creation of the LLC or the assignment of the Registration to the LLC.

39. During this entire period, Plaintiffs continued to sell SIGNAMAX CONNECTIVY SYSTEMS branded products in the United States.

40. Despite Defendant's ownership of the United States registration of the Mark, sales of SIGNAMAX counterfeit products ("Counterfeit Sales") by Defendant in the United States have been sporadic, limited to sales in 2008, 2009 and 2010.

41. In 2010, Plaintiffs learned that Lynn Electronics ("Lynn Electronics"), a Pennsylvania electronics distributor, is or was an authorized dealer of Defendant's Signamax branded products. See Exhibit F, attached hereto.

42. Upon information and belief, Lynn Electronics made sporadic Counterfeit Sales of Signamax branded products in the United States in 2009.

**Actual Confusion Caused by Defendant's Selling of
SIGNAMAX CONNECTIVY SYSTEMS Branded Products**

43. In July 2009, Plaintiffs learned that the Office of Naval Intelligence ("ONI") headquartered in Washington, D.C. had purchased SIGNAMAX CONNECTIVY SYSTEMS branded products, which were not supplied by Plaintiffs, from Accu-Tech Corporation ("Accu-Tech") of Roswell, Georgia, an electronics supplier. Upon learning this information, the ONI had concerns over the authenticity, performance, and reliability of the Accu-Tech supplied products.

44. In a message dated August 10, 2009, after investigation, Signamax informed the ONI that the products were not genuine Signamax, Inc. products and should the ONI require technical support, Signamax could not support counterfeit products. See Exhibit G, attached hereto.

45. In 2010, Plaintiffs became aware, through its customers, that a representative of Lynn Electronics was informing Plaintiffs' customers that it could purchase SIGNAMAX CONNECTIVY SYSTEMS branded products from a source other than Plaintiffs.

46. In April 2010, SAIC, Inc. ("SAIC"), a McLean, Virginia company, reported to Plaintiffs that it had purchased SIGNAMAX CONNECTIVY SYSTEMS branded products from Accu-Tech Corporation, which were defective and caused confusion over the parts' authenticity. See Exhibit H, attached hereto.

47. Plaintiffs informed SAIC that the parts it purchased were not authentic and that Plaintiffs were the only U.S. authorized manufacturers and sellers of SIGNAMAX CONNECTIVY SYSTEMS branded products. See Exhibit H, attached hereto.

48. The Defendant's European web site (www.signamax.eu) - accessible in the United States - created even more confusion by advertising and depicting SIGNAMAX CONNECTIVY SYSTEMS branded products. The web site listed the Defendant on its "Contact" page and falsely profiled its company as having headquarters in Miami, Florida, where the Plaintiffs are headquartered. These misrepresentations were actively promoted until it was removed sometime between June 2010 and January 2011. See Exhibit I (Internet Archive Screen Captures), attached hereto.

49. The website also uses images of Plaintiffs' products and product numbers copied from Plaintiffs' catalogue and websites. Any prospective customer visiting <www.signamax.eu> would confuse it with the genuine website owned by Plaintiffs: <www.signamax.com>.

### Registration of Signamax Connectivity Systems Packaging Copyright And Infringing Conduct

50. Effective July 7, 2009, Plaintiff Signamax received a United States copyright registration for the SIGNAMAX CONNECTIVY SYSTEMS packaging (Registration No. VA0001684298). See Exhibit J, attached hereto.

51. On June 14, 2010, in support of its Declaration of Use under Section 8 of the Trademark Act, Defendant filed a trademark specimen with the United States Patent and

Trademark Office (Registration No. 2,793,882). The specimen consisted of two photographs of the counterfeit SIGNAMAX CONNECTIVY SYSTEMS packaging, intentionally created to appear similar to Plaintiffs' product packaging. See Exhibit K, attached hereto.

52. Upon information and belief, all sales made by Defendant in the United States before and after AESP registered its copyright in the packaging were intentionally packed by Defendant in similar counterfeit packaging.

53. The Defendant's European web site (www.signamax.eu) - accessible in the United States - intentionally displays the SIGNAMAX CONNECTIVY SYSTEMS trademark in a substantially similar design to that registered by Signamax with the United States Copyright Office. The website also uses images of Plaintiffs' products and product numbers copied from Plaintiffs' catalogue and websites. Any prospective customer visiting www.signamax.eu would confuse it with the genuine website owned by Plaintiffs: www.signamax.com. The Defendant is still actively promoting these misrepresentations. *See* <www.signamax.eu/info.jsp?name=signamax_about_EN> and <signamax.com/about/signamax-connectivity-system>. See Exhibit L, attached hereto.

### Count I
### (Declaratory Judgment That AESP and Signamax
### Own the United States Trademark rights to
### SIGNAMAX CONNECTIVY SYSTEMS)

54. Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 53.

55. Plaintiffs have used the SIGNAMAX CONNECTIVY SYSTEMS trademark by selling and distributing products branded with the Mark in the United States from 2000 until the present.

56. Plaintiffs' use of the SIGNAMAX CONNECTIVY SYSTEMS trademark in the United States has been continuous and uninterrupted from 2000 until the present.

57. Plaintiffs have invested considerable financial resources in the marketing, sales, and distribution of products branded with the SIGNAMAX CONNECTIVY SYSTEMS trademark in the United States from 2000 until the present.

58. Plaintiffs have earned considerable good will through its sale and distribution of products branded with the SIGNAMAX CONNECTIVY SYSTEMS trademark such that customers and competitors recognize the origin of such goods to be AESP and Signamax.

59. Defendant's sale of products bearing the SIGNAMAX CONNECTIVY SYSTEMS trademark in the United States has been *de minimis*, sporadic and limited in time to the 2008 through the 2010 period, long after Plaintiffs began selling their products in the United States.

60. Defendant's sale of products bearing the SIGNAMAX CONNECTIVY SYSTEMS trademark in the United States has created actual confusion among Plaintiffs' customers, underscoring the strength of association between the Plaintiffs and their Mark.

61. Defendant's ownership of the United States registration of the Mark does not confer trademark rights in the Mark.

62. United States trademark rights arise only through continuous and uninterrupted use of the Mark in the United States.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

i.   A declaratory judgment that Plaintiffs' use of the Mark has been continuous and uninterrupted since year 2000;

ii.   A declaratory judgment that Plaintiffs are the priority users of the Mark; and

iii.   A declaratory judgment that the United States trademark rights in the Mark belong to Plaintiffs.

**Count II**
**(Cancellation of Trademark Registration No. 2793882)**

63. Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 62.

64. Under the Lanham Act, 15 U.S.C § 10511(a)(1), a trademark registration is predicated upon the applicant's use of the trademark in commerce.

65. Defendant does not and has not continuously used the SIGNAMAX CONNECTIVY SYSTEMS trademark in the United States.

WHEREFORE, Plaintiffs pray for an order from the Court that directs the United States Patent and Trademark Office to cancel Registration No. 2793882.

## COUNT III
### (Trademark Infringement)

66. Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 65.

67. As more particularly set forth above, Defendant has infringed upon Plaintiffs' SIGNAMAX CONNECTIVY SYSTEMS trademark in interstate commerce by selling, offering for sale, and otherwise marketing electronic connectivity products branded with the Mark.

68. As more particularly set forth above, Defendant's infringing conduct has been intentional, and made with the specific intent to cause confusion in the marketplace, to deceive potential customers regarding the nature and origin of Defendant's products, and to unfairly and illegally capitalize on and convert the goodwill and reputation of Plaintiffs' SIGNAMAX CONNECTIVY SYSTEMS trademark.

69. By reason of Defendant's acts and conduct as alleged herein, Plaintiffs have suffered damages in excess of One Hundred Thousand dollars ($100,000.00) to its business, reputation and good will, and has lost sales and profits that Plaintiffs would have otherwise made but for Defendant's wrongful and illegal conduct and have incurred additional costs related to requests to support and/or maintain counterfeit products.

WHEREFORE, Plaintiffs pray that judgment be entered in its favor and against the

Defendant:

i. Declaring that Defendant's use of the name and mark SIGNAMAX CONNECTIVY SYSTEMS infringes upon Plaintiffs' use of the Mark;

ii. Declaring that Defendant's use of the Mark constitutes intentional infringement of Plaintiffs' SIGNAMAX CONNECTIVY SYSTEMS trademark;

iii. Enjoining Defendant from further use of SIGNAMAX CONNECTIVY SYSTEMS, or any substantially similar variant thereof;

iv. Compelling Defendant to account for and pay over to Plaintiffs any and all profits derived from their use of the SIGNAMAX CONNECTIVY SYSTEMS trademark;

v. Awarding Plaintiff s treble and/or exemplary damages, and other statutory damages as may be provided for under law and/or as may otherwise be appropriate under the circumstances;

vi. Awarding Plaintiff costs of this action and reasonable attorneys' fees; and

vii. Granting such other and further relief as the Court deems just and proper.

## COUNT IV
### (Trademark Dilution)

70.   Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 69.

71.   The SIGNAMAX CONNECTIVY SYSTEMS trademark has become famous as a result of

a.   its distinctiveness, inherently or through acquired distinctiveness;

b.   the duration and extent of use; the duration and extent of advertising and publicity that utilized the Mark;

c.   the geographic extent of the trading area in which the Mark is used; the channels of trade for the goods and services with which the Mark is used;

d.   the degree of recognition of the Mark in the trading areas and channels of trade in which the Mark is used; and

e.   the insubstantial - if not non-existent - nature and use of marks similar to the Mark.

72.   The actions of Defendant, as described above, have diluted the reputation and value of Plaintiffs' famous Mark by advertising, selling, offering for sale and/or distributing identical and/or nearly identical goods and services of inferior quality to the same consumers in the same trade areas through the same channels of trade under the confusingly similar Mark, thereby tarnishing Plaintiffs' SIGNAMAX CONNECTIVY SYSTEMS trademark and blurring or diluting the Mark, all in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), as well as Virginia state dilution law.

73.   Defendant's actions have been willful, deliberate and intended to benefit Defendant at the expense of Plaintiffs, who have incurred damages in excess of One Hundred Thousand dollars ($100,000.00).

WHEREFORE, Plaintiffs pray that judgment be entered in its favor and against the Defendant:

i. Declaring that Defendant's use of the name and mark SIGNAMAX CONNECTIVY SYSTEMS infringes upon Plaintiffs' use of the Mark;

ii. Declaring that Defendant's use of the Mark constitutes intentional infringement of Plaintiffs' SIGNAMAX CONNECTIVY SYSTEMS trademark;

iii. Enjoining Defendant from further use of SIGNAMAX CONNECTIVY SYSTEMS, or any substantially similar variant thereof;

iv. Compelling Defendant to account for and pay over to Plaintiffs any and all profits derived from their use of the SIGNAMAX CONNECTIVY SYSTEMS trademark;

v. Awarding Plaintiff s treble and/or exemplary damages, and other statutory damages as may be provided for under law and/or as may otherwise be appropriate under the circumstances;

vi. Awarding Plaintiff costs of this action and reasonable attorneys' fees; and

vii. Granting such other and further relief as the Court deems just and proper.

## COUNT V
### (Violations of Lanham Act)

74. Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 73.

75. Defendant has promoted its use of Plaintiffs' Mark in interstate commerce with the designation and representation SIGNAMAX CONNECTIVY SYSTEMS.

76. Defendant's use of the Mark is a false description and representation that such marked products are made by, sponsored by, supported and maintained by or affiliated with Plaintiff.

77. Defendant's past and continued use of the SIGNAMAX CONNECTIVY SYSTEMS mark, or any substantially similar marks, has been intentional and in violation of 15 U.S.C. § 1125(a).

78. B y reason of Defendant's acts as alleged herein, Plaintiffs have suffered, and will continue to suffer, damages in excess of One Hundred Thousand dollars ($100,000.00) to their business, reputation and good will, have incurred additional costs related to requests to support and/or maintain counterfeit products and may have lost sales and profits that Plaintiffs would have otherwise made but for Defendant's wrongful conduct.

79.   Defend ant continues to do the acts complained of herein, and unless enjoined, Plaintiffs will continue to suffer the damages and injury outlined above.

WHEREFORE, Plaintiffs pray that judgment be entered in its favor and against the Defendant:

i.  Declaring that Defendant's use of the name and mark SIGNAMAX CONNECTIVY SYSTEMS infringes upon Plaintiffs' use of the Mark;

ii. Declaring that Defendant's use of the Mark constitutes intentional infringement of Plaintiffs' SIGNAMAX CONNECTIVY SYSTEMS trademark;

iii. Enjoining Defendant from further use of SIGNAMAX CONNECTIVY SYSTEMS, or any substantially similar variant thereof;

iv. Compelling Defendant to account for and pay over to Plaintiffs any and all profits derived from their use of the SIGNAMAX CONNECTIVY SYSTEMS trademark;

v.  Awarding Plaintiff s treble and/or exemplary damages, and other statutory damages as may be provided for under law and/or as may otherwise be appropriate under the circumstances;

vi. Awarding Plaintiff costs of this action and reasonable attorneys' fees; and

vii. Granting such other and further relief as the Court deems just and proper.

## COUNT VI
### (Copyright Infringement and
### Request for Damages Pursuant to 17 U.S.C. §504 et seq.)

80.   Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 79.

81.   Plaintiffs own all right, title, and interest in the design, including the color scheme and configuration of the SIGNAMAX CONNECTIVY SYSTEMS trademark and associated packaging.

82.   Effective July 7, 2009, Plaintiffs properly registered their copyright covering the packaging for SIGNAMAX CONNECTIVY SYSTEMS branded products by electronically delivering their application, deposit material along with the required payments to the Copyright Registrar. (The copyright at issue is registered under number VA0001684298 dated July 7, 2009 and is attached hereto as Exhibit J).

83.   In defiance of plaintiffs' ownership rights, defendant willfully, deliberately and intentionally infringed and continues to infringe plaintiffs' copyright by packaging counterfeit SIGNAMAX CONNECTIVY SYSTEMS branded products in substantially similar packaging resulting in ill-gotten profits, which are now due Plaintiffs.

84.   At no time after the July 7, 2009 did Defendant have a license or authority to use any form of plaintiffs' copyrighted packaging.

85.   Based on the foregoing, Plaintiffs are entitled to One Hundred Fifty Thousand ($150,000) Dollars per willful infringement pursuant to 17 U.S.C. § 505.

86.   Plaintiffs are also entitled to reasonable costs and attorneys fees incurred in proceeding with this action pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiffs requests judgment against the Defendant for an amount of compensatory and punitive damages representing defendant's profits, plus interest, costs, attorney's fees, and such other relief as the Court deems just.

### COUNT VII
### (Copyright Infringement and
### Request for Injunctive Relief Pursuant to 17 U.S.C. §502 et seq.)

87.   Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 86.

88.   Defendant has willfully infringed the copyright owned by plaintiffs which covers plaintiffs' product packaging as deposited with the Copyright Office and bearing registration

VA0001684298 dated July 7, 2009 and is attached hereto as Exhibit J.

89.   Defendant's infringement and use of Plaintiffs' copyrighted packaging has caused permanent and irreparable harm to Plaintiffs.

90.   Unless an injunction is granted barring Defendant from further performing, playing, or otherwise using Plaintiffs' copyrighted packaging, Plaintiffs will suffer ongoing irreparable harm.

91.   Plaintiffs do not have an adequate remedy at law.

92.   Based upon the clear and willful violations in this case, Plaintiffs have a substantial likelihood of success on the merits.

93.   Greater harm will befall the Plaintiffs than Defendant if the injunctive relief herein is not granted.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court to enter an Order:

i.   Restraining Defendant from promoting, selling, marketing, advertising, shipping, transporting (directly or indirectly) or otherwise moving in domestic or foreign commerce, any and all products or promotions which infringe upon Plaintiffs' copyrighted work; and/or

ii.   Ordering Defendant to forfeit (and/or recall) all packaging containing infringing material; and

iii.   Ordering Defendant to recall or remove any and all marketing and promotional material, which infringe Plaintiffs' work;

iv.   Ordering all of Defendant's agents to refrain from selling or marketing the infringing material in question; and

v.   Providing such other relief as the Court deems just, including costs and fees.

## COUNT VIII
### (Breach of Duty Of Good Faith and Fair Dealing
### Arising Out of Contract)

94. Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 93.

95. Defendant recognized from the beginning that Plaintiffs were the rightful owners of the SIGNAMAX CONNECTIVTY SYSTEMS trademark registrations.

96. Defendant similarly recognized that Plaintiffs were the sole owners of the SIGNAMAX CONNECTIVY SYSTEMS trademark rights in the United States.

97. Intelek and Ivo Kraváček deliberately created Defendant to take advantage of the scrivener's error of the Trademark Transfer Agreement by preying upon Plaintiffs' customers by selling or proposing to sell counterfeit products branded with the Mark.[3] *See* ¶¶ 28-33 *supra.*

98. These actions by Defendant were a breach of its duty of good faith and fair dealing arising under the contract to transfer the trademarks to AESP and caused damages in excess of One Hundred Thousand dollars ($100,000.00).

WHEREFORE, Plaintiffs request judgment against the Defendant for an amount of compensatory and punitive damages representing defendant's profits, plus interest, costs, reasonable attorney's fees, and such other relief as the Court deems just.

## COUNT IX
### (Fraud)

99. Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 98.

100. Defendant's conduct constitutes a deliberate fraud upon Plaintiffs, who have incurred damages in excess of One Hundred Thousand dollars ($100,000.00), intentionally creating confusion among Plaintiffs' customers, by:

---

[3] As the same person who owns Intelek and Apron owns Defendant, Plaintiffs cannot now state that Defendant has conspired with Intelek and Apron and their owner. But if it can be shown that the different companies are unrelated, a count alleging a conspiracy to defraud Plaintiffs may lie.

      a. Intentionally taking advantage of the scrivener's error in the Trademark Transfer Agreement;

      b. Ignoring the trademark restrictions in the 2005 Sales Agreement;

      c. Selling or attempting to sell Plaintiffs' customers counterfeit products branded with the Mark; and

      d. By referring customers to a web site that intentionally confuses the origin of Defendants' products with that of Plaintiffs' products.

WHEREFORE, Plaintiffs request judgment against the Defendant for an amount of compensatory and triple punitive damages representing defendant's profits, Plaintiffs' lost good will and reputation, plus interest, costs, reasonable attorney's fees, and such other relief as the Court deems just.

## COUNT X
### (Conversion)

101. Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 100.

102. Defendant's conduct constitutes a deliberate conversion of Plaintiffs' business opportunities, sales, goodwill and reputation by intentionally creating confusion among Plaintiffs' customers by selling them infringing counterfeit products, and causing damages in excess of One Hundred Thousand dollars ($100,000.00).

WHEREFORE, Plaintiffs request judgment against the Defendant for an amount of compensatory and damages representing defendant's profits, Plaintiffs' lost good will and reputation, plus interest, costs, reasonable attorney's fees, and such other relief as the Court deems just.

## COUNT XI
### (Tortious Interference with
### Existing Business Relationships)

103. Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 102.

104. Plaintiffs were made aware of attempts by Defendant to interfere with Plaintiffs' business relationships upon learning that Defendants were selling or attempting to sell existing customers counterfeit technology products branded with the Mark that were not and could not be supported by Plaintiffs. These efforts, upon information and belief, caused Plaintiffs to incur damages in excess of One Hundred Thousand dollars ($100,000.00).

WHEREFORE, Plaintiffs request judgment against the Defendant for an amount of compensatory and triple punitive damages representing defendant's profits, Plaintiffs' lost good will and reputation, plus interest, costs, reasonable attorney's fees, and such other relief as the Court deems just.

## COUNT XII
### (Unfair Competition under Virginia Law)

105. Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 104.

106. Defendant, by its actions in copying Plaintiffs' Mark, copying Plaintiffs' website, and other actions enumerated above, have unfairly competed with Plaintiffs and simulated "the name, symbols, or devices employed by [Plaintiffs] and substitut[ed] the goods or wares of one person for those of another, thus falsely inducing the purchase of [Defendant's] wares and thereby obtaining for [Defendant] the benefits properly belonging to [Plaintiffs]." *Benj. T. Crump Co. v. J. L. Lindsay,* Inc., 130 Va. 144, 150 (1921). These efforts, upon information and belief, caused Plaintiffs to incur damages in excess of One Hundred Thousand dollars ($100,000.00).

WHEREFORE, Plaintiffs request judgment against the Defendant for an amount of

compensatory and triple punitive damages representing defendant's profits, Plaintiffs' lost good will and reputation, plus interest, costs, reasonable attorney's fees, and such other relief as the Court deems just.

### COUNT XIII
### (Accounting)

107. Plaintiffs restate and incorporate by reference the allegations in Paragraphs 1 - 106.

108. Because of Defendant's attempt to defraud Plaintiffs, counterfeit Plaintiffs' products and divert sales belonging to Plaintiffs to Defendant, and because of Defendant's violation of the Lanham Act, it is necessary for this Honorable Court to order Defendant to account for all receipts, expenditures, and distributions on their accounts, and to compel the production of all books, records or other information concerning monies to which Plaintiffs are rightfully entitled.

WHEREFORE, Plaintiffs request that this Honorable Court enter a decree that:

i.  Orders defendants to account for all receipts, expenditures, and distributions on their accounts for the period from January 1, 2005 through and including the present;

ii.  B. Orders defendants to produce all books, records or other information concerning distributions and/or monies to which Plaintiffs are rightfully entitled;

iii.  C. Requires defendants to remit to Plaintiffs the balance of any such distributions and/or monies to which Plaintiffs are rightfully entitled;

D.  And for such other and further relief as the Court may deem appropriate.

/s/

D. J. Kaufman, J.D. Ph.D., VSB 33135
Kaufman Law Group, PLLC
8400 Towers Crescent Drive, Suite 1350
Vienna, VA 22182
david@BusinessBrawls.com
www.BusinessBrawls.com
Telephone: 703-764-9080
Facsimile:  703-764-0014
Admitted in VA, DC and MD

Dated: