**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **AESP, INC.,** *et al.,* | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:13-cv-1089** |
| | ) | |
| **SIGNAMAX, LLC,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

In this trademark and copyright infringement case, the parties have disputed the ownership of the trademark at issue—SIGNAMAX CONNECTIVITY SYSTEMS—for over seven years, including proceedings in a Czech court and before the Trademark Trial and Appeals Board ("TTAB") of the Patent and Trademark Office ("PTO"). This dispute remains central to the claims in this case. But at issue now is the threshold question of personal jurisdiction, namely, whether defendant's sale of allegedly infringing products from abroad to a United States distributor that, in turn, sells these infringing products nationwide constitutes a sufficient basis for the exercise of personal jurisdiction over defendant in this forum.

For the reasons that follow, the facts alleged in the complaint and the current factual record warrant the conclusion that there is no personal jurisdiction over defendant, and thus, defendant's motion to dismiss must be granted for lack of personal jurisdiction.

### I.

### A.

Plaintiff AESP, Inc. ("AESP") is a Florida corporation in the business of designing, developing, manufacturing, and selling cables for connecting personal

1

computers and peripherals, including printers and disk drives.  Plaintiff Signamax, Inc., a

Florida corporation, is a wholly owned subsidiary of AESP.

Defendant Signamax, LLC is a District of Columbia limited liability company

formed in 2005 by Apron spol s.r.o. ("Apron"), a Czech corporation.  Defendant is

engaged in the business of selling network connection components and cabling products.

In 1999, plaintiff AESP acquired the assets, including trademarks, of

Communication Components Co., Inc. ("CCCI").  Prior to the acquisition, CCCI was a

corporation that designed, developed, manufactured, and sold structured cabling

products, including interconnect cables and various devices used for computer

networking.  Plaintiffs allege that CCCI developed the SIGNAMAX CONNECTIVITY

SYSTEMS mark and logo in early 1994 to identify CCCI's line of structured cabling

products.  In 2000, following plaintiff AESP's acquisition of CCCI's assets, plaintiffs

allege that plaintiff AESP began to market and sell CCCI's SIGNAMAX

CONNECTIVITY SYSTEMS line of structured cabling products.

In 2001, plaintiff AESP purchased Intelek spol s.r.o. ("Intelek"), a Czech

corporation that manufactured Internet equipment and wireless communication hardware.

Plaintiff AESP made Intelek its wholly owned subsidiary for the purpose of establishing

a market presence in the Czech and Slovak Republics.  In 2002, Intelek filed a

registration for the term SIGNAMAX CONNECTIVITY SYSTEMS with the PTO, and

on December 16, 2003, the PTO issued the SIGNAMAX CONNECTIVITY SYSTEMS

trademark to Intelek.[1]

---

[1] U.S. Trademark Registration No. 2793882.  The Czech trademark, No. 246216, was
issued to Intelek on July 24, 2002.

2

In September 2004, plaintiff AESP and Intelek entered into an agreement through which Intelek's rights in the Czech trademark registration for SIGNAMAX CONNECTIVITY SYSTEMS were transferred to plaintiff AESP.   This agreement did not contain a provision that expressly transferred the U.S. trademark registration from Intelek to plaintiff AESP.  Plaintiffs allege that this omission was merely a scrivener's error that neither Intelek nor plaintiff AESP noticed at the time, and that the agreement should have contained such a provision because the consideration paid by plaintiff AESP to Intelek pursuant to the agreement included the cost of registering both the Czech trademark and the U.S. trademark.  Defendant denies this allegation, and claims that there was no understanding between the parties that the September 2004 agreement was meant to transfer all trademark registrations to AESP, not just the Czech registration.

On April 3, 2005, plaintiffs sold Intelek's assets to defendant's predecessor, Apron, a Czech corporation.  Plaintiffs claim that all parties to the April 2005 transaction understood that, despite the sale of Intelek's assets to Apron, plaintiff AESP was, and continued to be, the owner of the SIGNAMAX CONNECTIVITY SYSTEMS registration.  Defendant, however, claims that the SIGNAMAX CONNECTIVITY SYSTEMS registration was transferred to Apron together with all of Intelek's assets, and further claims that Apron's acquisition of the SIGNAMAX CONNECTIVITY SYSTEMS registration was the very purpose of the sale.

On July 29, 2005, defendant was registered as a Washington, D.C. limited liability company.  On August 24, 2005, Intelek, now owned by defendant, recorded an

assignment of the SIGNAMAX CONNECTIVITY SYSTEMS trademark that designated defendant as the assignee.[2]

Thereafter, on October 25, 2006, plaintiffs filed an action against Intelek in the Regional Court of Brno, Czech Republic, alleging unfair competition and trademark infringement of the SIGNAMAX CONNECTIVITY SYSTEMS mark and seeking recovery of the disputed U.S. Trademark registration.  Central to the dispute in the Czech Republic court proceeding was ownership of the mark.

Two days after the filing of the Czech Republic court action, plaintiffs, on October 27, 2006, instituted a cancellation petition against defendant before the PTO's TTAB.  This cancellation proceeding remains pending before the TTAB.  The TTAB has suspended this proceeding several times.  First, the TTAB suspended the proceeding on June 20, 2007 pending the outcome of the Czech Republic regional court action.  Proceedings were resumed on December 23, 2009.  The TTAB again suspended the proceeding on April 22, 2012 pending the outcome of plaintiffs' appeal of the Czech Republic regional court's decision to the High Court in Olomouc, Czech Republic.  The TTAB suspended the petition a third time on May 25, 2010 pending resolution of an ultimately unsuccessful motion for summary judgment filed at the TTAB by plaintiffs.  Finally, on August 30, 2013, plaintiffs filed a motion to suspend the cancellation petition before the TTAB pending the outcome of the instant case.

In the meantime, the Czech Republic regional court proceeding concluded on March 11, 2011 when that

---

[2] U.S. Trademark registration No. 2,793,882.

court found that plaintiff AESP transferred the SIGNAMAX CONNECTIVITY SYSTEMS mark to Apron, defendant's predecessor, along with the rest of Intelek's assets pursuant to the April 3, 2005 sale. On October 1, 2012, the Czech appellate court affirmed the judgment of the regional Czech court against plaintiffs and dismissed every count of plaintiffs' complaint. The Czech appellate court held that the SIGNAMAX CONNECTIVITY SYSTEMS mark was fully integrated in plaintiff AESP's April 3, 2005 sale of Intelek's assets to defendant's predecessor, and as a result of that transaction, the trademark belongs to defendant.

In this case, plaintiffs allege that plaintiffs own the rights to the SIGNAMAX CONNECTIVITY SYSTEMS mark and copyright[3] and therefore seek cancellation of defendant's U.S. Trademark No. 2793882 pursuant to 15 U.S.C. § 10511(a)(1). Plaintiffs also seek declaratory judgment that plaintiffs own the trademark and the copyright to SIGNAMAX CONNECTIVITY SYSTEMS and further seek injunctive relief and damages based on defendant's alleged copyright violations, trademark violations, trademark dilution, and violation of the Lanham Act. Plaintiffs further allege that defendant knew plaintiffs were the sole owners of the SIGNAMAX CONNECTIVITY SYSTEMS and deliberately took advantage of a scrivener's error in the agreement between plaintiff AESP and Intelek, breaching a duty of good faith and fair dealing arising under the transfer agreement between defendant's predecessor and plaintiffs. Plaintiffs further allege that defendant's actions in intentionally taking advantage of the scrivener's error in the transfer agreement and subsequently selling counterfeit products

---

[3] Plaintiff Signamax, Inc. received a U.S. copyright for the SIGNAMAX CONNECTIVITY SYSTEMS packaging on July 7, 2009. Registration No. VA 0001684298.

5

branded with the SIGNAMAX CONNECTIVITY SYSTEMS mark constitutes fraud,

conversion, tortious interference with business relationships, and unfair competition.

**B.**

The facts relevant to the issue of personal jurisdiction are easily summarized.

Plaintiffs' claim that personal jurisdiction exists over defendant in this forum is based on

the following transactions:

> (1) In 2009, Jetwing Tech, a Taiwanese corporation and defendant's authorized agent, sold allegedly infringing products to Lynn Electronics, defendant's sole authorized United States dealer.  Lynn Electronics is a Pennsylvania corporation and a nationwide retailer doing business through websites like Amazon.com.  Lynn Electronics then resold the allegedly infringing products to the Maryland branch of a national electronics distributor headquartered in Georgia, Accu-Tech Corp.  Accu-tech then resold the products to The Software Center, a Virginia corporation in Culpeper, Virginia.  The sale to The Software Center was a "drop shipment," that is, the products were picked up directly from Lynn Electronics' Pennsylvania warehouse and shipped directly to The Software Center in Culpeper.

> (2) The same transaction as above also occurred once in 2010.

> (3) In 2009, two identical transactions occurred in which Jetwing Tech again sold allegedly infringing products to Lynn Electronics in Pennsylvania. Lynn Electronics then resold these products to Swift, Inc., a Virginia company.

**II.**

Choice of law is the threshold issue.  As it is the Virginia long-arm statute that is

applicable, there can be no doubt that the law of the Supreme Court of Virginia governs

interpretation and application of Virginia's long-arm statute.  As to the question of

constitutional due process, federal law clearly applies—that is, in this forum, Supreme

Court and Fourth Circuit precedent.  It must be noted that defendant's 19-page

supplemental brief on personal jurisdiction cites to only one case involving Fourth Circuit

law. Instead, defendant's brief inexplicably focuses on Second Circuit and New York

law. Equally off-target, plaintiffs cite only Federal Circuit precedent on the question of

personal jurisdiction. Yet, as the Federal Circuit itself has recognized, Federal Circuit

law does not apply to district court cases involving solely non-patent actions.[4] Instead,

the law of the regional circuit controls. Thus, Federal Circuit law on personal jurisdiction

does not apply here.

   Under Fourth Circuit law, resolution of personal jurisdiction challenges involves a

two-step inquiry. *See Ellicott Machine Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d

474, 477 (4th Cir.1993). First, it is necessary to determine whether the state long-arm

statute—here, Va. Code Ann. § 8.01–328.1(A)(1)[5]—by its terms, reaches a defendant's

conduct. If the long-arm statute does not reach a defendant's conduct, the inquiry ends;

there is no personal jurisdiction over the defendant. *Id.* But if the long-arm statute, by its

terms, reaches a defendant's conduct, then the second inquiry—the due process inquiry—

must be pursued to determine whether the long-arm's reach exceeds its constitutional

grasp. *Id. See also RZS Holdings AVV v. PDVSA Petroleos S.A.*, 293 F.Supp.2d 645,

648 (E.D. Va. 2003). And because the Supreme Court of Virginia has construed the

"transacting business" provision of Virginia's long-arm statute to extend to the limits of

---

[4] *Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1201 (Fed. Cir. 2003)
("Because the issue of personal jurisdiction with respect to non-patent counts is not
intimately linked to patent law, we apply the law of the regional circuit."). Thus,
plaintiffs' heavy reliance on *LG Electronics, Inc. v. Asustek Computers*, 126 F.Supp.2d
414 (E.D. Va. 2000), is misplaced, because *LG Electronics* is a patent infringement case,
not a trademark infringement case, and thus governed by Federal Circuit law. The instant
case is a trademark infringement case involving no issues of patent infringement, and
thus governed by Fourth Circuit law.

[5] "A court may exercise personal jurisdiction over a person, who acts directly or by an
agent, as to a cause of action arising from the person's...[t]ransacting any business in this
Commonwealth." Va. Code Ann. § 8.01–328.1(A)(1).

due process, the statutory inquiry merges with, or collapses into, the constitutional due process inquiry, and thus it is necessary to address here only the due process inquiry.[6]

### A.

A court's exercise of personal jurisdiction over a non-resident defendant is consistent with due process if the defendant has sufficient "minimum contacts" with the forum such that requiring the defendant to defend its interests in the forum does not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Later cases have clarified that the minimum contacts must be "purposeful." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). This "purposeful" requirement "helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997).

Because defendant, a foreign corporation, has no presence in Virginia and did not itself sell products into Virginia, plaintiffs, to establish personal jurisdiction over defendant, must rely on the "stream of commerce" theory first articulated by the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). In *World-Wide Volkswagen*, the Supreme Court, in adopting the "stream of commerce" theory, explained that minimum contacts may be "purposeful," and hence sufficient to establish personal jurisdiction, if the defendant corporation "delivers its products into the stream of

---

[6] *Carmichael v. Snyder,* 209 Va. 451, 456 (1968) ("Chapter 4.1, Title 8 of the Code is a deliberate and conscious effort on the part of the General Assembly of Virginia to assert jurisdiction over nonresident defendants to the extent permissible by the Due Process Clause."); *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990) ("[I]n defining the term transacting business, we are mindful that the purpose of the Virginia long-arm statute is to extend jurisdiction to the extent permissible under the due process clause.").

commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-98.

The Supreme Court next addressed the "stream of commerce" theory in *Asahi Metal Industry v. Superior Court,* 480 U.S. 102 (1987). *Asahi* concerned California's exertion of personal jurisdiction over the defendant, a Japanese manufacturer of valves. The Japanese manufacturer did not itself sell the valves into California but had the knowledge that the valves would be incorporated into tire tubes eventually sold into California. The Court's efforts to resolve the issue of whether the defendant had the minimum contacts with California necessary to confer personal jurisdiction resulted in a split decision.

Justice O'Connor's opinion, joined by three other Justices,[7] stated that placing a product in the stream of commerce provides personal jurisdiction only if that placement was "an action of the defendant purposefully directed at the forum State." *Id.* at 112. In other words, mere placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state, even when the non-resident defendant is aware that the product ultimately will enter the forum state. Accordingly, Justice O'Connor stated that the exertion of personal jurisdiction in the forum state over the foreign defendant exceeded the limits of due process when personal jurisdiction was based only on the defendant's knowledge that some of the valves would be incorporated into tire tubes sold in the forum state.

---

[7] Justices Powell, Scalia, and Chief Justice Rehnquist, concurring.

On the other hand, Justice Brennan's concurrence, also joined by three Justices,[8] considered that additional showing of purposefulness unnecessary and explained that "jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause," for "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Id.* at 117. Justice Brennan's concurrence stated that foreseeability or awareness that "the stream of commerce may or will sweep the product into the forum State" is sufficient for the exercise of personal jurisdiction under the stream of commerce theory. *Id.* at 112. Accordingly, under Justice Brennan's version of the "stream of commerce" theory, the foreign defendant did have sufficient minimum contacts with California.[9] The Supreme Court has not yet resolved this split between Justice O'Connor's opinion and Justice Brennan's concurrence, and it is important to see which view the Fourth Circuit has adopted to resolve the instant case.

In *Lesnick v. Hollingsworth & Vose Co.,*[10] the Fourth Circuit firmly rejected Justice Brennan's approach and apparently favored Justice O'Connor's approach. The plaintiff in *Lesnick*, on behalf of the decedent, sued a non-resident defendant corporation

---

[8] Justices White, Marshall, and Blackmun joined Justice Brennan, concurring in part and concurring in the judgment.

[9] The Court was unanimous in finding that California's exercise of personal jurisdiction over the foreign defendant was unconstitutional because the exercise of personal jurisdiction over the foreign defendant, based on the particular facts of that case, was unfair and unreasonable. Justice Stevens, along with Justices White and Blackmun, concurred in part and concurred in the judgment, stating that an examination of minimum contacts was not necessary to determine whether California's exercise of personal jurisdiction over Asahi was constitutional, because that exercise of personal jurisdiction was clearly unreasonable.

[10] 35 F.3d 393 (4th Cir. 1994).

that manufactured a particular filter used in a certain brand of cigarettes, which the

decedent had smoked for years.  The defendant corporation had manufactured

approximately ten billion such filters with the knowledge that the filters would be

incorporated into cigarettes sold nationwide.  The plaintiff argued that the defendant was

subject to personal jurisdiction in the forum because the defendant placed the filters into

the stream of commerce with the knowledge and expectation that cigarettes incorporating

the filters would be purchased by consumers in the forum state.  The Fourth Circuit

rejected that argument and made clear that a non-resident defendant may only be subject

to personal jurisdiction under the "stream of commerce" theory "if that defendant

engaged in some activity purposely directed at the forum state."  *Id.* at 945-96.  In this

regard, the Fourth Circuit explained,

> The touchstone of the minimum contacts analysis remains that an out-of-state
> person has engaged in some activity purposefully directed toward the forum
> state...To permit a state to assert jurisdiction over any person in the country
> whose product is sold in the state simply because a person must expect that to
> happen destroys the notion of individual sovereignties inherent in our system of
> federalism.

*Id.* at 945.  Simple "awareness that the stream of commerce may or will sweep the

product into the forum State" is not enough to render the exercise of personal jurisdiction

constitutional.  *Id.*  Thus, a defendant's placement of products into the stream of

commerce "with the expectation that they would be purchased in [the forum state]" is not

enough to constitute "activity purposefully directed" at that forum state.  *In re Celotex

Corp.*, 124 F.3d at 629.  In sum, then, Fourth Circuit law requires that, in addition to

placing the object in the stream of commerce, a plaintiff must show "[a]dditional conduct

of the defendant [that] indicate[s] an intent or purpose to serve the market in the forum

State."  *Asahi*, 480 U.S. at 112.  Such additional, intentional conduct may consist of

11

"designing the product for the market in the forum advertising in the forum...establishing

channels for providing regular advice to customers in the forum...or marketing the

product through a distributor who has agreed to serve as the sales agent in the forum..."

*Id.*

       This clear Fourth Circuit precedent, applied here, compels the conclusion that

there is no personal jurisdiction over defendant in this case.  The only basis for personal

jurisdiction are the four sales of allegedly infringing products to Lynn Electronics, a

Pennsylvania corporation, and Lynn Electronics' subsequent sale of those products to two

customers in Virginia.  Significantly, the record reflects that defendant did not direct the

sales of its products to Virginia or any Virginia customers, nor did it require Lynn

Electronics to sell the products to Virginia customers.  Instead, the record reflects no

more than that defendant might expect that the products would eventually be sold

somewhere in the United States, including Virginia.  There is no evidence in the record

that reflects that defendant specifically structured its relationship with Lynn Electronics,

its U.S. distributor, in order to facilitate the sale of the allegedly infringing products in

Virginia.  Nor is there any evidence that defendant marketed the allegedly infringing

products in Virginia or advertised in Virginia.  Defendant's only contact with Virginia

appears to be its sales to a nationwide distributor.  The mere presence of defendant's

product in Virginia is not a contact that subjects defendant to personal jurisdiction when

it was Lynn Electronics, not defendant, that sold the products into Virginia.  Under *Asahi*

and *Lesnick*, defendant's introduction of its product into the stream of commerce by

selling products to a distributor selling nationwide is, by itself, an insufficient basis for

personal jurisdiction.  Accordingly, personal jurisdiction over defendant does not

comport with due process, and this matter must be dismissed without prejudice.[11]

An appropriate Order will issue.


Alexandria, Virginia
July 8, 2014

/s/

T. S. Ellis, III
United States District Judge

---

[11] Given that the central disputed issue—the ownership of the mark SIGNAMAX
CONNECTIVITY SYSTEMS—is not resolved here, the TTAB should proceed promptly
to resolve the ownership of the trademark to avoid having this matter continue beyond the
seven-plus years that it has already been pending, and to prevent this matter from
becoming a trademark *Jarndyce v. Jarndyce*.